UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:                           │
│ DATE FILED:  6/10/14             │
└─────────────────────────────────┘
```

KENNETH RINALDI,

                Plaintiff,

     -against-

THE CITY OF NEW YORK, et al.,

                Defendants.

13 Civ. 4881 (LAK) (JLC)

**REPORT AND RECOMMENDATION**

**JAMES L. COTT, United States Magistrate Judge**.

**To the Honorable Lewis A. Kaplan, United States District Judge:**

Plaintiff Kenneth Rinaldi, a retired New York City police officer, has brought suit under Section 1983 alleging violations of his Fourth Amendment right to be free from unlawful searches and his Fourteenth Amendment rights to due process and equal protection. Rinaldi claims that Defendants secretly recorded and disseminated his phone and text message communications as part of an investigation into "ticket fixing" within the NYPD, and subsequently imposed disciplinary charges without an opportunity for consensual resolution. Rinaldi further alleges that as a result he suffered reputational harm and was denied a clearance letter required to obtain a pistol permit after retirement. Defendants move to dismiss the complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). Defendants also seek dismissal of claims against the NYPD because it is a non-suable entity and against former NYPD Commissioner Raymond Kelly for failure to plead his personal involvement in the alleged constitutional violations. For the reasons that follow, I recommend that Defendants' motion be granted but that Rinaldi be given leave to amend two of the claims set forth in his complaint.

## I.     BACKGROUND

### A. Facts

#### 1.  Rinaldi's Career History and NYPD Investigation into "Ticket Fixing"

The following facts are taken from Rinaldi's verified complaint filed July 15, 2013

("Compl.") (Dkt. No. 1), and are accepted as true for the purposes of this motion.  Rinaldi joined

the NYPD in April 1991.  Id. at ¶ 16.  Assigned to the 9th precinct on the Lower East Side of

Manhattan, he received six police duty awards and two meritorious citations and served as a

union delegate to the Patrolman's Benevolent Association over the course of a twenty-year

career.  Id. at ¶¶ 13-14.  In March 2011, nearing his 20th anniversary with the NYPD, Rinaldi

served his 30-day notice of retirement in person at the NYPD Pension Section, a required step

for a retiring officer.  Id. at ¶ 16.

On April 9, 2011, a NYPD lieutenant from the Internal Affairs Bureau ("IAB") came to

Rinaldi's home with a notification that Rinaldi appear before the IAB.  Id. at ¶ 17.  At that

appearance on April 11, 2011, Rinaldi was told that he was being investigated for his alleged role

in "fixing tickets," that is, abusing an officer's discretionary authority to retroactively block

summonses for infractions once they have been issued.  Id. at ¶ 19.  The IAB questioned Rinaldi

under Police Patrol Guide Section 206-13, which compels NYPD officers under threat of

possible suspension or termination to respond to charges.  Id. at ¶ 18-19.

The IAB also played for Rinaldi the recordings of multiple telephone conversations and

produced numerous text messages from his phone allegedly revealing communications with

other NYPD officers about ticket fixing.  Id. at ¶ 20.  According to Rinaldi, the recordings and

text messages had been secretly obtained by the NYPD and the investigative division of the

Bronx County District Attorney's Office ("Bronx DA").  Id. at ¶ 22.  The audio recordings and

messages were to be presented to a grand jury in the Bronx weighing criminal charges for the ticket fixing scheme, following a multi-year investigation focused on "hundreds" of NYPD officers. Id. Rinaldi never gave consent for his communications to be monitored and was never shown a warrant authorizing investigators to do so in this manner. Id. at ¶¶ 21, 27.

Rinaldi believes that the NYPD Department Advocate's Office ("DAO"), the internal division that investigates and prosecutes officers for administrative violations, obtained these communications through an ex parte application to the Bronx County Supreme Court for a "sharing order," which was granted. Id. at ¶¶ 23-24. The DAO intended to use the audio recordings and messages as evidence in administrative proceedings against various officers, including Rinaldi. Id. at ¶ 24.

### 2. Rinaldi's Retirement and Administrative Proceedings Against Him

Three days after Rinaldi's appearance before the IAB, on April 14, 2011, Rinaldi was ordered to surrender his firearm and was placed on "modified assignment." Id. at ¶ 30. On the same date, Rinaldi was served with "charges and specifications" alleging that he had improperly used his position as a PBA union delegate to prevent the adjudication of summonses issued against two individuals. Id. at ¶ 31. In response, Rinaldi, represented by counsel, requested "a trial/hearing date (an opportunity to be heard on the charges) and/or, in the alternative, a plea bargain offer to dispose of said charges from the [DAO]" before he was to retire. Id. at ¶ 32. The NYPD refused to grant a hearing date or provide a plea bargain offer and, pursuant to the 30-day notice, Rinaldi retired from the NYPD on April 29, 2011. Id. at ¶¶ 33-34.

Because Rinaldi officially retired with the administrative charges unresolved, he was not issued a "pistol license inquiry" form, also known as a "good guy letter," which is required under

NYPD policy for a retired officer to receive a pistol permit. Id. at ¶ 35. Rinaldi's retired identification card was stamped with the words "No Firearms." Id. at ¶ 36.

More than a year later, on August 29, 2012, after allegedly "learning of similarly situated officers who had been able to resolve their administrative charges and retire with a 'good guy letter,'" Rinaldi requested a "Name Clearing Hearing." Id. at ¶ 37. This request was denied in a letter dated September 27, 2012, from Captain Keith Kane of the NYPD Employee Management Division, which, according to Rinaldi, reiterated that a good guy letter could not be issued because of his retirement with administrative charges pending. Id. at ¶ 41.[1]

## B. Procedural History

Represented by counsel, Rinaldi commenced this action on July 15, 2013, naming as defendants the City of New York, the NYPD, the Bronx DA, then-NYPD Commissioner Raymond Kelly, in his official and individual capacity, John Doe employees of the Bronx DA, and John Doe employees of the NYPD. On July 17, 2013, the case was referred to me for general pretrial supervision and preparation of reports and recommendations for any dispositive motions. Order of Reference (Dkt. No. 2). In lieu of an answer, Defendants filed the present motion to dismiss (Dkt. No. 7), along with a memorandum of law in support ("Def. Mem.") (Dkt. No. 8) on November 21, 2013. Rinaldi filed a memorandum of law in opposition to the motion ("Pl. Mem.") (Dkt. No. 11) on January 8, 2014. Defendants submitted their reply brief ("Def. Reply") (Dkt. No. 13) on January 17, 2014.

---

[1]     The Complaint misspelled the Captain's name as Keith Cane. See Declaration of Joseph W. Murray dated Jan. 8, 2014 ("Murray Decl.") (Dkt. No. 12), ¶ 5.

## II.    DISCUSSION

### A.  Standard of Review

For the purposes of evaluating a motion to dismiss, the district court must accept all well-pleaded factual allegations as true and construe them in the light most favorable to the plaintiff. See Bryant v. New York State Educ. Dep't, 692 F.3d 202, 210 (2d Cir. 2012); Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).  Under the now familiar standard articulated by the Supreme Court, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citation omitted).  The plausibility standard does not equate to a "probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (citation omitted).  Allegations that merely amount to legal conclusions are insufficient in themselves to survive a motion to dismiss, as is a "formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555.  Moreover, a court may not "assume that the [plaintiff] can prove facts that [he] has not alleged." Electronics Commc'ns Corp. v. Toshiba Am. Consumer Products, Inc., 129 F.3d 240, 243 (2d Cir. 1997) (citation omitted).  As part of its review, in addition to the four corners of the complaint, "a court may consider documents attached to the complaint as an exhibit or incorporated in it by reference." Chambers, 282 F.3d at 153 (citation and internal quotation marks omitted).

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that:

5

"(1) defendants were state actors or were acting under color of state law at the time of the alleged wrongful action, and (2) the action deprived plaintiff of a right secured by the Constitution or federal law." Vaher v. Town of Orangetown, N.Y., 916 F. Supp. 2d 404, 425 (S.D.N.Y. 2013) (citing Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999)); see also Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 119 (2d Cir. 1995) ("Section 1983 is only a grant of a right of action; the substantive right giving rise to the action must come from another source."). While the plausibility standard applies with equal force to Section 1983 claims, the Second Circuit has emphasized that the rule that a court "draw all reasonable inferences in favor of the non-movant" must be "applied with particular strictness when the plaintiff complains of a civil rights violation." Shechter v. Comptroller of City of New York, 79 F.3d 265, 270 (2d Cir. 1996) (citations omitted). "Thus, a claim for relief under 42 U.S.C. § 1983 only need allege that some person acting under color of state law deprived the claimant of a federal right." Aikman v. Cnty. of Westchester, 491 F. Supp. 2d 374, 378 (S.D.N.Y. 2007) (quoting Green v. Maraio, 722 F.2d 1013, 1016 (2d Cir. 1983)) (alterations and internal quotation marks omitted).

**B. Analysis**

### 1. Fourth Amendment Claim

Rinaldi complains that he never gave his consent to have his voice and text message communications monitored by the NYPD and the Bronx DA, and that "[n]o warrant authorizing this intrusion upon Plaintiff's privacy was ever shown to [him]." Compl., ¶ 21; see also id. at ¶ 46. Consequently, Rinaldi alleges that each act of monitoring, which he believes to have occurred "over five times," was a violation of the Fourth Amendment. Id. at ¶¶ 47-49. Because the "NYPD did not turn over the relevant search warrants and supporting affidavits," Rinaldi adds, he "was deprived of the ability to challenge the constitutionality of the search warrants or

6

their admissibility into evidence" under New York law. Id. at ¶ 25. Rinaldi fails to state a valid claim to relief based on these allegations.

Conducting a search without a warrant is "per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). A constitutional violation may also arise where a warrant exists but contains a defect that renders it and the resulting search invalid. See, e.g., Groh v. Ramirez, 540 U.S. 551, 557 (2004) (warrant facially invalid under Fourth Amendment where it failed to describe with particularity the things to be seized); United States v. Clark, 638 F.3d 89, 99 (2d Cir. 2011) (search warrant for entire multifamily dwelling invalid where not supported by probable cause). The electronic interception of phone conversations constitutes a "search" covered by the Fourth Amendment. See United States v. Serrano, 450 F. Supp. 2d 227, 235 (S.D.N.Y. 2006) (citing Berger v. State of New York, 388 U.S. 41, 51 (1967)).[2]

---

[2]     By contrast, there is no consensus as to whether the well-established notion of a "reasonable expectation of privacy" that triggers Fourth Amendment protection, Katz, 389 U.S. at 360 (Harlan, J. concurring), applies to an individual's text messages. Compare United States v. Finley, 477 F.3d 250, 259 (5th Cir. 2007) (concluding there is "reasonable expectation of privacy in . . . text messages on the cell phone") with United States v. Jones, 149 F. App'x 954, 959 (11th Cir. 2005) (criminal defendants did not have reasonable expectation of privacy in text messages sent to co-conspirator). The Supreme Court recently declined to resolve this very question, opining that courts as yet lack sufficient knowledge and experience with this medium of communication to embrace a definitive rule. City of Ontario, Cal. v. Quon, 560 U.S. 746, 759 (2010) ("The judiciary risks error by elaborating too fully on the Fourth Amendment implications of emerging technology before its role in society has become clear."). Instead, the Court remanded on other grounds after the Ninth Circuit had held that police officers have a reasonable expectation of privacy in text messages sent through employer-provided pagers. Quon v. Arch Wireless Operating Co., Inc., 529 F.3d 892, 908 (9th Cir. 2008). The Ninth Circuit had emphasized that it was not engaging in a "monolithic" analysis, and instead called for "a context-sensitive inquiry" into the expectation of privacy in text messages. Id. at 906.

Because Rinaldi's Fourth Amendment claim should ultimately be dismissed because of deficiencies in the pleadings unrelated to the precise medium of the intercepted communications (i.e., voice calls or text messages), as discussed below, the Court need not weigh in on this issue.

7

Notably, Rinaldi does not allege in his complaint that Defendants recorded his communications either in the absence of a valid warrant or on the basis of a defective one: he alleges only that he was never *shown* a warrant.[3] Defendants argue that Rinaldi, if he purports to state a claim based on a warrant*less* search of his communications, relies on mere conjecture that a valid warrant must not have existed because he was never presented with one. Def. Mem., 8. Indeed, in his memorandum in opposition to the motion to dismiss, Rinaldi concedes that he "would be less than truthful if he asserted with absolute certainty that there were no warrants authorizing [the] recordings." Pl. Mem., 6.[4] Rinaldi's claim consequently rests on speculation, and where pleadings require the court to infer "the mere possibility of misconduct" in this fashion, the complaint has not reasonably established entitlement to relief. Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

---

[3]     A necessary characteristic of communications surveillance in criminal investigations is, of course, that it remain unperceived by the target of the search, at least throughout its duration. See United States v. Villegas, 899 F.2d 1324, 1336 (2d Cir. 1990) ("Certain types of searches or surveillances depend for their success on the absence of premature disclosure. The use of a wiretap . . . would likely produce little evidence of wrongdoing if the wrongdoers knew in advance that their conversations . . . would be monitored."); People v. Tansey, 156 Misc. 2d 233, 248-49, 593 N.Y.S.2d 426, 436 (Sup. Ct. 1992) ("Also self-evident is the State's interest in maintaining secrecy; the eavesdropping application is made *ex parte* and both its value and effectiveness are lost when its existence is divulged to the target."). In this vein, Defendants point out that under New York law, eavesdropping warrants and applications must be sealed and may be disclosed only upon a showing of good cause, suggesting why Rinaldi was never made aware of a warrant. Def. Mem., 8 (citing N.Y. Crim. Proc. Law § 700.55). Rinaldi counters that Defendants "imput[e] additional pleading requirements" by requiring him to rebut "speculat[ion] that the warrants, if any, were filed under seal simply because there is a statute that requires them to be [sealed]." Pl. Mem., 6. The parties' conjecture about the sealing requirement is irrelevant to the pertinent question here: whether Rinaldi, in alleging that he had a constitutional right to *see* the warrant, sealed or otherwise, states a valid claim for relief.

[4]     Defendants also contend that Rinaldi essentially concedes that a warrant existed because he alleges that a state judge signed a "sharing order" by which the NYPD DAO was able to obtain the communications. It would "defy common sense," Defendants argue, that a judge would have signed such an order if the recordings had been unlawfully obtained. Def. Mem., 9. Given Rinaldi's concession in his opposition papers that he cannot be sure about the existence of a warrant, the Court need not engage in such speculation.

Rinaldi's barebones assertion that he was not shown a warrant could be broadly construed as implicating another basis for a Fourth Amendment claim. While the Second Circuit does not appear to have addressed this issue directly, some federal courts "have recognized a Fourth Amendment right to access warrant materials," including the warrant itself and the supporting affidavits. In re Search Warrants Issued on April 26, 2004, 353 F. Supp. 2d 584, 587-88 (D. Md. 2004) (noting the right "is not absolute and must be weighed against the government interest in nondisclosure") (collecting cases). See also Matter of Up N. Plastics, Inc., 940 F. Supp. 229, 232 (D. Minn. 1996) (discussing "right under the warrant clause of the Fourth Amendment to inspect and copy the affidavit upon which the warrant was issued"); In re Search Warrants Issued August 29, 1994, 889 F. Supp. 296, 298-99, 301 (S.D. Ohio 1995) (right to be free from unreasonable searches includes right to inspect warrant documents); but see Matter of EyeCare Physicians of Am., 100 F.3d 514, 517 (7th Cir. 1996) ("The Warrant Clause of the Fourth Amendment circumscribes the issuance of warrants, but does not address access to the affidavits employed to support them."). In each of the cases recognizing a right to inspect, that right was affirmed in the context of a plaintiff *proactively* seeking access to warrants and supporting documents that were under seal. By contrast, even if he is asserting a Fourth Amendment right to inspect, Rinaldi alleges only that he was never shown a warrant and nothing more. The Court is unaware of any support, and Rinaldi has cited to none, for the proposition that, as a *constitutional* requirement, the government must affirmatively furnish a copy of the warrant to a wiretap target who otherwise takes no action. Thus, even if this Court were to endorse an inherent right to inspect search warrants under the Fourth Amendment, because Rinaldi does not allege that he sought access to the warrant authorizing the wiretapping of his phone in the first place, he would not state the minimum elements of such a claim.

9

Finally, in the interest of completeness, the Court addresses what appears to be a third alternative basis for Rinaldi's claim, his statement (in an unrelated section of his complaint outlining a due process claim) that the "NYPD failed to provide [him] with notice of the search warrants (if any existed at all)." Compl., ¶ 54. To the extent Rinaldi complains of not being served with notice prior to the surveillance of his communications, there is no "requirement of advance notice." See Katz, 389 U.S. at 356 n.16 (describing "electronic surveillance" as context in which "officers need not announce their purpose"); see also supra n.3. On the other hand, post-interception notice of a wiretap warrant is required under federal and state statutes. See, e.g., United States v. Ruiz, No. 09 Cr. 719 (DAB), 2010 WL 4840055, at *8 (S.D.N.Y. Nov. 19, 2010) (discussing notice requirements under Title III of the Omnibus Crime Control and Safe Streets Act, the federal wiretapping statute); People v. Madori, 550 N.Y.S.2d 924, 928-29 (2d Dep't 1990) (describing New York notice provision as "remarkably similar" to federal counterpart).

As a constitutional matter, the Supreme Court has held that such post hoc notification represents an "adequate substitute" for the contemporaneous service of a warrant ordinarily made during the course of searches of tangible property. Dalia v. United States, 441 U.S. 238, 248 (1979) (notice and other provisions "satisfy constitutional requirements") (citing United States v. Donovan, 429 U.S. 413, 429 n. 19 (1977)). Importantly, however, failure to provide post-intercept notice in accordance with statutory requirements does not, by itself, constitute a constitutional violation. Donovan, 429 U.S. at 434 ("[W]e do not think that the failure to comply fully with [requirements to identify and notify persons who are recorded] renders unlawful an intercept order that in all other respects satisfies the statutory requirements."). Post-intercept notice was not meant "to serve as an independent restraint on resort to the wiretap procedure."

10

Id. at 439.  Thus, in the context of motions to suppress evidence gathered without such notice in criminal investigations, courts have required something more – a showing of prejudice, lack of actual notice, bad faith by the government – before questioning the lawfulness, let alone constitutionality, of a wiretap.  See, e.g., United States v. Dunn, 723 F.3d 919, 927 (8th Cir. 2013) cert. denied, 134 S. Ct. 945 (2014) (notice of wiretap sufficient because target had actual notice of surveillance and was not prejudiced); United States v. Robinson, 513 F. Supp. 2d 169, 188 (M.D. Pa. 2007) (no issue with validity of wiretap where targets did not receive post-intercept notice but were not prejudiced and eventually received transcripts of intercepted communications).  By contrast, Rinaldi provides no factual content beyond his stand-alone allegation that he never received notice.  This is not enough to state a minimum claim under Section 1983.  Consequently, Rinaldi's Fourth Amendment cause of action should be dismissed.

### 2.  Fourteenth Amendment Substantive Due Process Claim

As a second cause of action, Rinaldi alleges that he was denied substantive due process under the Fourteenth Amendment when the recordings of his phone and text message communications were disseminated by the Bronx DA to the NYPD as part of its investigation into ticket-fixing.  Compl., ¶ 52.  In particular, Rinaldi alleges that he was denied an opportunity to oppose the *ex parte* application for the sharing order authorizing this dissemination and, because he was not given notice of the warrants, he was "also denied the State court remedy of challenging" their admissibility "in the employment disciplinary forum."  Id. at ¶¶ 53-54.  Rinaldi adds that he was prevented from asserting an "intra-union communication privilege" to suppress the use of the recordings.  Id. at ¶ 55.  This claim should also be dismissed.

Substantive due process under the Fourteenth Amendment "protects those rights that are 'so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"  John

11

Gil Const., Inc. v. Riverso, 72 F. Supp. 2d 242, 256 (S.D.N.Y. 1999) (quoting Local 342 v. Town Bd. of Huntington, 31 F.3d 1191, 1196 (2d Cir. 1994)).  There is no fixed list of applicable protections, but, broadly speaking, substantive due process protects those rights considered "central to an individual's freedom."  Id. (citing Empire Transit Mix, Inc. v. Giuliani, 37 F. Supp. 2d 331, 339 (S.D.N.Y. 1999)) (listing rights to privacy, family, and procreation as examples).  "For a substantive due process claim to survive a Rule 12(b)(6) dismissal motion, it must allege governmental conduct that 'is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'"  Velez v. Levy, 401 F.3d 75, 93 (2d Cir. 2005) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998)).  There is no easily definable way to measure what shocks the conscience; as a general baseline, the Second Circuit has counseled that there must be "'malicious and sadistic' abuses of power by government officials, intended to 'oppress or to cause injury' and designed for no legitimate government purpose."  Id. at 94 (quoting Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 252 (2d Cir. 2001)).

Here, although Rinaldi complains that he was unable to challenge the admissibility of the wiretap evidence gathered against him, he fails to identify any fundamental right or interest of the magnitude required to invoke substantive due process implicated by Defendants' actions. See, e.g., Malapanis v. Regan, 335 F. Supp. 2d 285, 294 (D. Conn. 2004) ("temporary seizure of property under a search warrant does not rise to the level of a substantive due process violation" where alleged interest is plaintiff's brief inability to engage in profession as a result of seizure of computer).  Moreover, the crux of Rinaldi's claim – that Defendants improperly disseminated Rinaldi's communications without providing notice – simply does not describe conduct that on its face is "so outrageously arbitrary as to constitute a gross abuse of governmental authority." Natale v. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir. 1999) (citations omitted).  Far more

12

factual context – about Defendants' motivations in carrying out the underlying investigation and the basis for initiating it, for instance – is required in order to lay out the contours of the requisite "malicious" and "sadistic" conduct.

In his memorandum in opposition, Rinaldi attempts to provide this "egregious, outrageous, and shocking" backdrop by portraying the wiretap as part of an improper investigation by the NYPD of "the union that represents [its] employees" – the "incestual [sic] nature" of which "can reasonably inferred from the facts alleged in the Complaint." Pl. Mem., 7. Rinaldi's characterization aside, there is no reasonable basis to infer that an employer's internal investigation shocks the conscience simply because it is focused on a union member. Although Rinaldi is entitled "to enjoy all favorable inferences from facts that have been pleaded," the Court may not "permit conclusory statements to substitute for minimally sufficient factual allegations." Electronics Commc'ns Corp., 129 F.3d at 243 (citation omitted).

Finally, Rinaldi's substantive due process claim must fail to the extent that it simply seeks relief already articulated as part of his first cause of action attacking Defendants' purported lack of a proper warrant. "[W]here a specific constitutional provision prohibits government action, plaintiffs seeking redress for that prohibited conduct in a § 1983 suit cannot make reference to the broad notion of substantive due process." Velez, 401 F.3d at 94 (citing Kia P. v. McIntyre, 235 F.3d 749, 757-58 (2d Cir. 2000). Rinaldi's allegations, that Defendants made improper use of the communications collected by wiretapping his phone, are merely a reiteration of his Fourth Amendment claim that any evidence so seized is open to challenge. Thus, while framed as a substantive due process claim, this cause of action is "at best redundant and subsumed in his other claims." Hubbard v. Hanley, No. 09 Civ. 10265 (HB), 2010 WL 1914989,

at *5 (S.D.N.Y. May 12, 2010).  For all of these reasons, Rinaldi's substantive due process claim should be dismissed.

### 3. Fourteenth Amendment Procedural Due Process Claim

"A procedural due process claim is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." Weslowski v. Zugibe, No. 12 Civ. 8755 (KMK), 2014 WL 1612967, at *16 (S.D.N.Y. Mar. 31, 2014) (quoting Bryant v. N.Y. State Educ. Dep't, 692 F.3d 202, 218 (2d Cir. 2012)). Raising such a claim, Rinaldi asserts that he was deprived of the opportunity to contest the charges against him at an administrative hearing and to conduct plea bargain negotiations to dispose of the charges before he retired.  Compl., ¶ 59.  He also alleges that he was denied a request for a post-employment "name-clearing hearing" and negotiations to dispose of the charges following his retirement.  Id. at ¶¶ 69-70.  He specifies that the NYPD "routinely schedules disciplinary hearings" or, alternatively, engages in plea bargain negotiations to resolve similar charges.  Id. at ¶ 60.  As a consequence, Rinaldi alleges that he suffered emotional injury and was unable to obtain the good guy letter required for a pistol license and consequently "lucrative employment as an armed guard."  Id. at ¶ 61.  Rinaldi also asserts that his "liberty interest in his good name, reputation, honor, and integrity" was "irreparably damaged" by Defendants' refusal to adjudicate the charges against him.  Id. at ¶ 39.  Defendants move to dismiss these claims on various grounds.

#### a. Lack of Liberty or Property Interest

As a threshold matter, Defendants contend that Rinaldi cannot plausibly assert that he was deprived of either a liberty or property interest.  Def. Mem., 12-16.  Where the liberty interest allegedly deprived is reputational in nature, the plaintiff must establish the elements of a

14

so-called "stigma-plus" claim: "(1) the utterance of a[n injurious] statement . . . that is capable of being proved false, and that [he] claim[s] is false, and (2) some tangible and material state-imposed burden in addition to the stigmatizing statement." Monserrate v. New York State Senate, 599 F.3d 148, 158 (2d Cir. 2010) (quoting Velez, 401 F.3d at 87). Defendants argue, correctly, that Rinaldi's pleadings fail to meet the first of these requirements because Rinaldi concedes the veracity of the purportedly harmful statements. Def. Mem., 12. Rinaldi complains that his personnel record reflects that he retired with "unresolved administrative charges pending" and his retired identification card is stamped with "No Firearms." Compl., ¶ 36. While he undoubtedly considers these statements injurious, they are objectively accurate descriptions reflecting the facts that Rinaldi had to surrender his firearm while on modified assignment and that he chose to retire before the charges were resolved. Id. at ¶¶ 30, 34. "[T]rue public statements that a party is under investigation," or in this case a statement merely indicating that charges are pending, are not "stigmatizing." Wiese v. Kelley, No. 08 Civ. 6348 (CS), 2009 WL 2902513, at *5 (S.D.N.Y. Sept. 10, 2009) (collecting cases).[5] Consequently, the Court, without need to reach the "plus" element, finds that Rinaldi's pleadings do not implicate a liberty interest.

---

[5]     Defendants also assert that Rinaldi's liberty interest claim is deficient because the allegedly stigmatizing statements were not made in public. Def. Mem., 13. This particular argument is unavailing. Rinaldi alleges, which the Court accepts as true for the purposes of this motion, that the information about the unresolved charges is "reflect[ed]" in his personnel record. Compl., ¶ 36. The Second Circuit has held that inclusion of statements in a personnel file, even if not yet released (to a prospective employer for instance), can satisfy the publication requirement. See Segal v. City of New York, 459 F.3d 207, 213 (2d Cir. 2006) ("We have previously held that the placement of statements in an employee's personnel file may satisfy the contemporaneous public disclosure elements of a stigma-plus claim.") (citing Brandt v. Bd. of Coop. Educ. Servs., 820 F.2d 41, 45 (2d Cir. 1987)).

To implicate deprivation of a property interest, a plaintiff must demonstrate an interest "in a benefit that is more than an abstract need or desire for it . . . . She must, instead, have a legitimate claim of entitlement to it under state or federal law in order to state a § 1983 claim." Finley v. Giacobbe, 79 F.3d 1285, 1296 (2d Cir. 1996) (quoting Board of Regents v. Roth, 408 U.S. 564, 577 (1972)) (alteration and internal quotation marks omitted).  According to Defendants, Rinaldi's only putative property interest, the good guy letter and the resulting pistol permit, does not meet this standard.  Def. Mem., 15.  I concur.

"[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion."  Town of Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005) (citation omitted). In a recent case on point, the Second Circuit noted that, "[u]nder New York law, it is well settled that the possession of a handgun license is a privilege, not a right, which is subject to the broad discretion of the New York City Police Commissioner."  Boss v. Kelly, 306 F. App'x 649, 650 (2d Cir. 2009) (quoting Papaioannou v. Kelly, 788 N.Y.S.2d 378, 378 (1st Dep't 2005)).  The Circuit therefore affirmed the district court's dismissal of a police officer's claim that he had been deprived of a protected property interest when the police commissioner refused to restore his use of a police-issued firearm.  Id.  The district court in that case had previously clarified that, under New York law, the commissioner's broad discretion to restrict access to firearms applied with equal force to police officer-employees as to civilians.  Boss v. Kelly, No. 07 Civ. 2113 (SHS), 2007 WL 2412261, at *4 (S.D.N.Y. Aug. 23, 2007).  Accordingly, Rinaldi cannot establish that he had a protected property interest in a good guy letter and pistol permit, either as an employee of the NYPD or as a retired civilian.

**b. Availability of Adequate Process**

Even assuming that Rinaldi could articulate a qualifying liberty or property interest,

Defendants argue that Rinaldi cannot state a claim for relief because there existed an "adequate

state post-deprivation procedure" to remedy the alleged "random, arbitrary deprivation."  Def.

Mem., 10-11 (citing Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d

877, 881-82 (2d Cir. 1996) ("HANAC")).  Because such a remedy, in the form of an Article 78

proceeding in New York state court, was available to Rinaldi, he cannot sustain a claim that he

was denied procedural due process.

"When the state conduct in question is random and unauthorized, the state satisfies

procedural due process requirements so long as it provides meaningful post-deprivation remedy."

Rivera-Powell v. New York City Bd. of Elections, 470 F.3d 458, 465 (2d Cir. 2006) (citing

HANAC, 101 F.3d at 880 and Hudson v. Palmer, 468 U.S. 517, 533 (1984)).  However, "when

the deprivation is pursuant to an established state procedure," meaning the state is presumably in

a position to anticipate the need of a pre-deprivation hearing, "the availability of post-deprivation

procedures will not, ipso facto, satisfy due process."  Rivera-Powell, 470 F.3d at 465 (citations

omitted).  The line between these types of deprivation is not always clear.  Id. ("[G]overnment

actors' conduct cannot be considered random and unauthorized . . . if the state delegated to those

actors 'the power and authority to effect the very deprivation complained of . . . and the

concomitant duty to initiate the procedural safeguards set up by state law.'") (quoting Zinermon

v. Burch, 494 U.S. 113, 138 (1990)) (alteration omitted).

Rinaldi urges the Court to determine for itself the adequate process that should have been

afforded him given the specific circumstances of his case, by assessing the factors outlined by

17

the Supreme Court in Mathews v. Eldridge, 424 U.S. 319 (1976). Pl. Mem., 9.[6] However, it is

apparent from Rinaldi's allegations that the state conduct he complains of falls into the "random

and unauthorized" category. Rinaldi states that the NYPD "routinely" conducts the sort of

disciplinary hearing and plea negotiations that he sought to clear the way for good guy letters,

thus rendering the deprivation in his case not the product of policy, but of arbitrary application of

an otherwise available procedure. See Compl., ¶ 60.

In New York, a plaintiff may bring an Article 78 action in state court when faced with

this very type of injury. See N.Y. C.P.L.R. § 7803(3) (Article 78 petition adjudicates "whether a

determination was made in violation of lawful procedure, was affected by an error of law or was

arbitrary and capricious or an abuse of discretion"); see also Baloy v. Kelly, 938 N.Y.S.2d 430,

431 (1st Dep't 2012) (affirming denial of Article 78 petition challenging denial of good guy

letter on timeliness grounds). And where it is available, "an Article 78 proceeding is a perfectly

adequate postdeprivation remedy . . . for due process purposes even though the petitioner may

not be able to recover the same relief that he could in a § 1983 suit." Rosato v. Town of

---

[6]     To highlight the inadequate process given him, Rinaldi avers that he was faced with a
difficult choice in April 2011: as the charges against him arose after he put in his retirement
notice and given the unwillingness of the NYPD to schedule a hearing date or engage in plea
bargaining before the 30-day notice period expired, he "was left with the potential to have to
continue working as a police officer indefinitely beyond his regularly scheduled retirement date."
Pl. Mem., 10. However, the Court notes that nowhere in the complaint does Rinaldi allege that
his retirement in April 2011 was *mandatory*. While that date may have been his preference, once
he was served with the administrative charges, Rinaldi could have presumably deferred retiring
until the charges were resolved. It was ultimately Rinaldi's decision to retire when he did with
the charges still pending and, similarly, not to seek the available remedy of bringing an Article
78 suit. See Giglio v. Dunn, 732 F.2d 1133, 1135 (2d Cir. 1984) (high school principal not
deprived of due process where no hearing provided before his voluntary resignation and where
he declined to bring Article 78 action). Rinaldi provides no authority that the fact that the NYPD
did not provide a hearing or offer plea negotiations expeditiously between April 11, when
Rinaldi appeared before the IAB, and Rinaldi's preferred retirement date later that same month
constitutes a due process violation.

Yorktown, No. 13 Civ. 4069 (VB), 2014 WL 521577, at *4 (S.D.N.Y. Jan. 27, 2014) (quoting

HANAC, 101 F.3d at 881); see also Chernoff v. City of New York, No. 06 Civ. 2897 (CPS)

(CLP), 2008 WL 4239161, at *7 (E.D.N.Y. Sept. 10, 2008) ("To the extent that plaintiff claims

his procedural due process rights were violated on account of random, unauthorized acts . . . an

Article 78 proceeding provided the proper course of action and plaintiff's procedural due process

claims fail as a matter of law."). The existence of this remedy for the random and unauthorized

deprivation Rinaldi alleges terminates the inquiry into any possible liability as a matter of law.

See Rivera-Powell, 470 F.3d at 465. Therefore, Rinaldi's procedural due process claim, given

the lack of an identifiable liberty or property interest and, alternatively, the availability of an

adequate post-deprivation remedy, must fail.

### 4. Fourteenth Amendment Equal Protection Claim

Defendants next move to dismiss Rinaldi's equal protection claim, which alleges that,

although "multiple similarly situated officers and supervisors" were also investigated for ticket

fixing, they received more favorable treatment than Rinaldi in the form of minor disciplinary

action, without a rational basis for such disparate treatment. Compl., ¶¶ 63-64, 66. Rinaldi

specifically alleges that these other officers were issued good guy letters and pistol permits while

he was not. Id. at ¶ 63. This claim, while it raises an intricate question about the nature of the

NYPD's role as both employer and government regulator in determining whether retired officers

may obtain guns, should also be dismissed.

Rinaldi does not purport to base his equal protection challenge on membership in a

protected class. Pl. Mem., 12. Instead, he asserts a so-called "class-of-one" claim, which arises

"where the plaintiff alleges that [he] has been intentionally treated differently from others

similarly situated and that there is no rational basis for the difference in treatment." Analytical

Diagnostic Labs, Inc. v. Kusel, 626 F.3d 135, 140 (2d Cir. 2010) (quoting Village of

Willowbrook v. Olech, 528 U.S. 562, 564 (2000)).  The Supreme Court has expressly held that

"the class-of-one theory of equal protection does not apply in the public employment context."

Engquist v. Oregon Dep't of Agr., 553 U.S. 591, 598 (2008).  The Court reasoned that "[t]here

are some forms of state action," including decisions made by the state as employer, "which by

their nature involve discretionary decisionmaking based on a vast array of subjective,

individualized assessments"; distinct treatment of a singled-out individual is an "accepted

consequence of the discretion granted" in such actions.  Id. at 603.  However, the Second Circuit

has cautioned that Engquist "does not bar *all* class-of-one claims involving discretionary state

action" and should not be reflexively applied outside the public employment context.  Kusel, 626

F.3d at 142-43 (emphasis added) (citing Hanes v. Zurick, 578 F.3d 491, 495 (7th Cir. 2009)).

The Kusel court highlighted the "crucial difference, with respect to constitutional analysis,

between the government exercising the power to regulate or license, as lawmaker, and the

government acting as proprietor, to manage its internal operations."  Kusel, 626 F.3d at 142

(quoting Engquist, 553 U.S. at 598).  This distinction is premised on the fact that "government

has significantly greater leeway in its dealings with citizen employees than it does when it brings

its sovereign power to bear on citizens at large."  Engquist, 553 U.S. at 599.

     The state action involved in this case straddles the line between these respective

government functions, plausibly falling into either domain depending on the perspective taken.

Defendants argue that, because Rinaldi was a public employee and has challenged decisions

made during his employment relationship with Defendants, his class-of-one claim is precluded

by Engquist.  Def. Mem., 18-19.  Rinaldi, meanwhile, relies on Kusel to argue that Engquist does

not govern because the actual impact of Defendants' challenged decision invokes more of the

state's regulatory and licensing authority as sovereign than its internal oversight as employer.  Pl. Mem., 13.  Both parties' contentions have merit.

According to the complaint, the NYPD issues good guy letters and pistol permits "to retiring police officers," i.e., its employees, "pursuant to Department policy."  Compl., ¶ 35. Among other criteria, the NYPD considers as part of this policy the existence of any pending disciplinary charges that may have arisen against the applicant during the performance of his work duties; if charges are pending, no letter may be issued.  Id. at ¶¶ 34-35.  Viewed in this light, Defendants appear to be exercising their managerial discretion in setting the terms of an employment-related benefit, and "where plaintiff was a public employee challenging employment decisions, Engquist controls."  Gentile v. Nulty, 769 F. Supp. 2d 573, 578 (S.D.N.Y. 2011) (dismissing police officer's class-of-one equal protection claim challenging denial of disability benefits); see also Appel v. Spiridon, 531 F.3d 138, 141 (2d Cir. 2008) (professor's class-of-one claim following suspension dismissed because "Equal Protection Clause does not apply to a public employee").[7]  On the other hand, in declining to issue a good guy letter, the NYPD in essence controls Rinaldi's ability to have a pistol, *even after* he has left state employment.  The government certainly may enforce otherwise permissible guidelines it believes proper for determining who may obtain a gun, but to the extent this power is brought to

---

[7]     It should be noted, however, that while Engquist spoke in broad terms about the preclusion of class-of-one claims in the "public employment context," the Supreme Court's analysis in that case was limited in particular to "personnel actions" affecting the immediate terms of employment: hiring and firing decisions (the claim in the case arose from an alleged unlawful firing) and determinations related to promotion, salary, and work assignments. Engquist, 553 U.S. at 607-08.  The Court was particularly concerned with preventing what it believed would be a flood of claims triggered by grievances with routine, necessary employment actions should workplace class-of-one actions be allowed.  Id. at 607 ("[G]overnment offices could not function if every employment decision became a constitutional matter.") (citation omitted).  It is not clear, however, whether the Engquist court would envision the type of state action implicated here as analogous.

bear on non-employee citizens, the state's authority clearly flows from its prerogatives as regulator. See McDonald v. City of Chicago, Ill., 561 U.S. 742, --, 130 S. Ct. 3020, 3047 (2010) (reaffirming validity of regulatory measures taken by municipalities to limit possession of firearms by certain classes of people).

Ultimately, the Court does not have to resolve whether Defendants' denial of the good guy letter to Rinaldi implicates the state's discretion as employer or its sovereign regulatory power. Even if the Court were to agree that Engquist does not preclude Rinaldi's class-of-one claim, his equal protection cause of action cannot survive a motion to dismiss because Rinaldi fails to clear the threshold hurdle of pleading the existence of similarly-situated comparators. "In order to succeed on a 'class of one' claim, the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high." Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005) (citing Purze v. Village of Winthrop Harbor, 286 F.3d 452, 455 (7th Cir. 2002)) overruled on other grounds by Appel v. Spiridon, 531 F.3d 138 (2d Cir. 2008); accord Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills, 815 F. Supp. 2d 679, 697 (S.D.N.Y. 2011) ("An extremely high level of similarity is required in the 'class of one' context because plaintiffs asserting those claims are attempting to prove that the government's treatment was arbitrary and irrational."). Indeed, the plaintiff must point to at least one other individual whose circumstances, aside from being treated more favorably than plaintiff, are *prima facie* identical" in all other respects. Neilson, 409 F.3d at 105 (citation omitted). To that end, the plaintiff must establish that:

> (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake.

Id. (citing Olech, 528 U.S. at 565).

In the face of this highly demanding standard, Rinaldi offers only the conclusory allegation that there were "similarly situated officers and supervisors" who like him were investigated, but unlike him were given preferential treatment. Compl., ¶¶ 63-64. He provides no details whatsoever as to who these other officers and supervisors are or the circumstances of their cases, aside from the gloss that they too were investigated for ticket fixing but were issued pistol permits anyway. See, e.g., Best v. New York City Dep't of Correction, No. 12 Civ. 7028 (KMK), 2014 WL 1612984, at *10 (S.D.N.Y. Mar. 31, 2014) (dismissing class-of-one claim of inmate complaining officials adjudicated his infraction in "unprecedented" manner, where no information provided about "whether the circumstances of the individuals involved in [comparable] situations were 'prima facie identical' to those of Plaintiff"); Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d 55, 60 (2d Cir. 2010) (affirming dismissal of class-of-one claims of landowners whose applications for sewage hook-ups were denied where alleged comparator properties described generically without details establishing similarity). Accordingly, Rinaldi does not allege sufficient factual content as required under Iqbal, 556 U.S. at 678, to establish a plausible claim, and certainly not enough to: (i) discern whether there may have been a legitimate basis to justify any differential treatment from these other officers, and (ii) exclude the possibility that the treatment was the product of a mistake. Neilson, 409 F.3d at 105.[8]  As a result, Defendants' motion to dismiss Rinaldi's equal protection claim should be granted.

---

[8]     Crucially, for instance, the complaint is silent as to whether these other allegedly comparable officers sought to retire *before* resolution of their disciplinary charges but nonetheless received good guy letters, or were granted their letters upon retirement only after the

### 5. <u>Monell</u> Claims Against New York City

Defendants move to dismiss Rinaldi's claims against the City of New York (the "City"),

arguing that they fail to satisfy the minimum pleading standards for such claims as established in

<u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658 (1978).  Def. Mem., 19-20.

As a threshold matter, Rinaldi's claims against the City should be dismissed because of his

failure to state valid claims for any underlying constitutional violation as discussed above.  <u>See,

e.g.</u>, <u>Bolden v. Cnty. of Sullivan</u>, 523 F. App'x 832, 834 (2d Cir. 2013) ("[B]ecause the district

court properly found no underlying constitutional violation, its decision not to address the

County defendants' liability under Monell was correct.") (citing <u>Segal v. City of N. Y.</u>, 459 F.3d

207, 219 (2d Cir. 2006)).  Nonetheless, even assuming the viability of an underlying claim,

Rinaldi's claims against the City should be dismissed because he does not allege that the

individual defendants inflicted a constitutional injury in execution of a municipal policy or

custom.  <u>See</u> <u>Monell</u>, 436 U.S. at 694.

 <u>Monell</u> holds that isolated instances of unconstitutional conduct by its employees cannot

give rise to the government's vicarious liability.  <u>See</u> <u>City of Oklahoma City v. Tuttle</u>, 471 U.S.

808, 831 (1985).  Rather, a plaintiff must "allege facts demonstrating: (1) the existence of an

officially-adopted 'policy, custom, or practice' and (2) a direct and deliberate causal connection

between that 'policy, custom, or practice' and the violation of plaintiff's federally-protected

rights."  <u>Santos v. New York City</u>, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012)

---

administrative process was resolved (which would mean they are not similarly situated to Rinaldi
in a material way).

(citing Board of Cnty. Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403-04 (1997)).
Rinaldi asserts that he has pleaded such facts in describing the NYPD's strict policy forestalling
issuance of good guy letters to any retiree with unresolved disciplinary charges. Pl. Mem., 13.

Yet in no instance was this particular policy the direct *cause* of any of his claimed
constitutional injuries. His Fourth Amendment and substantive due process claims are unrelated,
arising from an allegedly improper use of a warrantless search. His procedural due process
claim, that he was denied the opportunity to adjudicate the charges against him, turns on whether
an adequate post-deprivation remedy was available to him and not on the policy itself, which
only describes the effect of having charges pending upon an officer's separation from the NYPD.
Finally, his equal protection claim is premised on an allegation that Rinaldi was *arbitrarily*
singled out by not being given a more favorable disposition of the charges in contravention of
normal practice, the exact opposite of an injury caused by the application of a policy or custom.
Accordingly, because Rinaldi does not plead "a causal link between the policy, custom or
practice and the alleged injury," there can be no finding of municipal liability. Brandon v. City
of New York, 705 F. Supp. 2d 261, 277 (S.D.N.Y. 2010) (citing Batista v. Rodriguez, 702 F.2d
393, 397 (2d Cir. 1983)). Rinaldi's Monell claims against the City should therefore be
dismissed.

### 6. Claims Against the NYPD

Defendants assert, and Rinaldi concedes, that the NYPD is not an entity that may be sued.
Def. Mem., 20 (quoting Jenkins v. City of New York, 478 F.3d 76, 93 n. 19 (2d Cir. 2007)); Pl.
Mem., 13. Under the New York City Charter, "[a]ll actions and proceedings for the recovery of
penalties for the violation of any law shall be brought in the name of the city of New York and

not in that of any agency." N.Y.C. Charter § 396.  Accordingly, Rinaldi's claims against the NYPD should be dismissed.

### 7.  Claims Against Individual Defendant Kelly

Finally, Defendants move to dismiss Rinaldi's claims against former Police Commissioner Raymond Kelly in his individual capacity.  Def. Mem., 21.  To sustain a Section 1983 suit against an individual, a plaintiff must establish that defendant's direct or personal involvement in the allegedly unconstitutional actions led to the plaintiff's injury.  See, e.g., Reynolds v. Barrett, 685 F.3d 193, 204 (2d Cir. 2012) ("[L]iability for an Equal Protection Clause violation under § 1983 requires personal involvement by a defendant, who must act with discriminatory purpose.").  Rinaldi believes that Kelly's direct involvement is established because Rinaldi's appeal for a name-clearing hearing to the NYPD was addressed to the then-commissioner, who, Rinaldi appears to allege, consequently denied the petition himself.  Pl. Mem., 13-14.  This contention is without merit and the claims against Kelly should be dismissed.

There is no liability under Section 1983 against a supervisor or other official for the actions of his subordinates simply by virtue of his position.  See Frederick v. City of New York, No. 13 Civ. 897 (MKB), 2013 WL 1753063, at *3 (E.D.N.Y. Apr. 22, 2013) ("no *respondeat superior* or vicarious liability under § 1983").  Instead, "a plaintiff must plead that each Government-official defendant, through the official's *own individual actions*, has violated the Constitution." Iqbal, 556 U.S. at 676 (emphasis added).  The mere fact that Rinaldi addressed his request for a hearing to Kelly is insufficient to meet this pleading standard.  That administrative requests are routinely directed to the attention of department heads and commissioners does not mean that these officials are personally involved in the adjudication of

26

each and every request.[9]  Because Rinaldi fails to demonstrate any facts as to Kelly's "direct

involvement with, knowledge of, or responsibility for" the alleged deprivation, Frederick, 2013

WL 1753063, at *3, Defendants' motion to dismiss Rinaldi's claims against Kelly should be

granted.

## C.  Leave to Amend Complaint

Rinaldi has requested leave to amend his complaint to satisfy the deficiencies in his

pleadings in the event his claims are dismissed.  Pl. Mem., 14.  It is "within the sound discretion

of the district court to grant or deny leave to amend," McCarthy v. Dun & Bradstreet Corp., 482

F.3d 184, 200 (2d Cir. 2007), although leave should be freely given "when justice so requires"

under Rule 15(a)(2) of the Federal Rules of Civil Procedure.  Defendants oppose allowing

Rinaldi to amend, arguing that he has not actually moved for leave to amend and, alternatively,

that any amendment would be futile.  Def. Reply, at 8-10.  I find that there is a sufficient basis to

grant Rinaldi leave to replead at least in part.

To begin, Defendants assert that a formal motion to amend, rather than a passing request

in a memorandum of law as Rinaldi has made here, as well as an attached proposed amended

complaint, are required before leave to replead can be granted.  Id. at 9 (citing Elexco Land

Servs., Inc. v. Hennig, No. 11 Civ. 214 (RJA) (JJM), 2012 WL 1909217, at *2 (W.D.N.Y. Apr.

23, 2012), report and recommendation adopted by 2012 WL 1909347 (W.D.N.Y. May 25, 2012)

and Clayton v. White Hall School District, 778 F.2d 457, 460 (8th Cir. 1985)).  This proposition

is incorrect.  See Porat v. Lincoln Towers Cmty. Ass'n, 464 F.3d 274, 276 (2d Cir. 2006)

("[T]his Court has indicated that where a plaintiff clearly has expressed a desire to amend, a lack

---

[9]      For example, the letter sent by the NYPD to Rinaldi denying his request was signed by a
Captain Keith Kane.  Letter dated Sept. 27, 2012 (attached as Exhibit C to Murray Decl.); see
Compl., ¶ 41.

of a formal motion is not a sufficient ground for a district court to dismiss without leave to amend.") (citing Oliver Schools, Inc. v. Foley, 930 F.2d 248, 252-53 (2d Cir. 1991)). Rinaldi has articulated a desire to amend in the event of dismissal of his claims and I therefore consider the merits of that request.

"An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." Lucente v. Int'l Bus. Machines Corp., 310 F.3d 243, 258 (2d Cir. 2002) (citation omitted). Amendment is not futile so long as there are "colorable grounds for relief on the new claim." Augustus v. MSG Metro Channel, 217 F. Supp. 2d 458, 465 n.43 (S.D.N.Y. 2002) (citation and internal quotation marks omitted). Indeed, the interest of justice may require it "unless the plaintiff is guilty of undue delay or bad faith or unless permission to amend would unduly prejudice the opposing party." Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc., 748 F.2d 774, 783 (2d Cir. 1984). Defendants do not suggest that any of these prohibiting factors apply to Rinaldi.

It is true that amendment would not lead to a different outcome than the one recommended here for most of Rinaldi's claims. As noted, Rinaldi has conceded that he cannot state for certain whether a valid warrant authorizing the search of his phone communications existed, eliminating any plausible cause of action based on a warrantless search. As to his substantive due process claim, Rinaldi can present no conceivable new fact that would somehow elevate the allegedly improper dissemination of his communications to the level of a violation of a fundamental right. Nor would any new fact alter the conclusion, as a matter of law, that the availability of an Article 78 proceeding was an adequate post-deprivation remedy that forestalls any procedural due process claim.

By contrast, the Court cannot say that amended pleadings would necessarily be fruitless with respect to two of Rinaldi's present causes of action. First, to the extent that Rinaldi can expand on his claim that he was not shown a warrant to include allegations that he had sought access to it proactively, he might be able to present enough facts to state a plausible claim that his right to inspect was violated. As discussed above, recognition of this precise right under the Fourth Amendment is an open question in this Circuit, and thus raising such a claim, if sufficiently pled, cannot be immediately characterized as futile. It is also theoretically possible, even if unlikely, that Rinaldi could adduce more facts about the lack of a post-intercept notice of the warrant to color a constitutional claim. Second, while Rinaldi has failed to adduce facts about his purported comparators with the very high degree of similarity required for class-of-one equal protection actions, he conceivably could do so by repleading with greater specificity about these individuals' identities and cases. See MacPherson v. Town of Southampton, 738 F. Supp. 2d 353, 375 (E.D.N.Y. 2010) (granting leave to amend in order to state equal protection claim with "greater precision"); A.B.C. Home Furnishings, Inc. v. Town of E. Hampton, 947 F. Supp. 635, 647 (E.D.N.Y. 1996) (granting plaintiff leave to amend equal protection claim in order to name similarly situated entities and describe differential treatment in more detail). Because the Court cannot rule out the possibility that amended pleadings could resuscitate these two causes of action, Rinaldi should be granted leave to amend his complaint as to these particular claims. Rinaldi should be cautioned, however, that any "amendment is subject to scrutiny under Rule 11." MacPherson, 738 F. Supp. 2d at 375.

## III.    CONCLUSION

For the reasons stated herein, I recommend that Defendants' motion to dismiss Rinaldi's complaint be granted in its entirety. I further recommend that Rinaldi be granted leave to amend

his pleadings as to his equal protection and Fourth Amendment claims consistent with the analysis set forth in this Report.

## PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Lewis A. Kaplan and the undersigned, United States Courthouse, 500 Pearl Street, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Kaplan.

FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated:  New York, New York
        June 10, 2014

JAMES L. COTT
United States Magistrate Judge